JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

JAN 20 1971

PATRICK D. HOWARD
CLERK OF THE PANEL

THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE CBS LICENSING     )
ANTITRUST LITIGATION    )          DOCKET NO. 59

OPINION AND ORDER

BEFORE ALFRED P. MURRAH, CHAIRMAN, AND JOHN MINOR WISDOM,
EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH
S. LORD, III, AND STANLEY A. WEIGEL*, JUDGES OF THE PANEL

PER CURIAM

        Record Club of America, Inc., has commenced two actions

in different districts attacking licensing agreements entered

into by CBS as licensee and numerous producers and manufacturers

of records and tapes as licensors.  Both complaints allege,

basically, that the licenses constitute exclusive agreements

for the production of the licensors' tapes and records by the

Columbia Record Club, plaintiff's competitor, in violation of

the antitrust laws.  The Eastern District of Pennsylvania

action was filed by Record Club and originally named CBS and

several licensors as defendants.  Only CBS and one licensor

_____

*Judge Stanley A. Weigel was unable to attend the hearing in
this matter, but has, with the consent of the parties, partici-
pated in the decision.

- 2 -

remain as defendants in that action.  The Southern District of
New York action was only recently filed and names a large
number of record manufacturers, alleged to be licensors to CBS,
as defendants.  There are no common defendants in the two
actions; however, the complaints are substantially similar
and involve the legality of the same type of licensing agreements.

These two cases are before the Panel on the motion of
one of the New York defendants for transfer of that action to
the Eastern District of Pennsylvania for coordinated or consoli-
dated pretrial proceedings with the case pending there.  Several
of the New York defendants and CBS, the principal Philadelphia
defendant, support this motion while Record Club opposes it.
We conclude that the convenience of the parties and witnesses
and the just and efficient conduct of the litigation require
transfer of the New York case to Philadelphia.

No one disputes that the substantially similar com-
plaints raise common questions of fact concerning the existence
and effect of these licensing agreements.  Record Club contends,
however, that these actions involve merely "run of the mill"
antitrust questions not sufficiently complex to justify treat-
ment of these two cases under Section 1407.  See *In re Scotch
Whiskey Antitrust Litigation*, 299 F. Supp. 543 (JPML 1969).

Although the common fact question raised by these
substantially similar complaints are not so large as those

- 3 -

in the IBM cases, *In re IBM Antitrust Litigation*, 302 F.
Supp 796 (JPML 1969), they are sufficiently broad and complex,
when combined with the factors of judicial efficiency and
inconvenience to the parties, to merit treatment under
Section 1407 and to make them distinguishable from the two
cases involved in *In re Scoth Whiskey Antitrust Litigation*,
*supra*, where transfer was denied.  The two *Scotch Whiskey*
cases raised a limited number of common questions and were
filed in widely separated districts[1]/ by different plaintiffs.
Substantial inconvenience to one of the plaintiffs and to
some of the defendants would have resulted from the transfer
of either case under Section 1407.

In contrast, transfer in the present cases is likely
to produce a substantial savings of time and effort for court
and counsel and will result in minimal inconvenience to the
parties.  We envision this saving of time and effort because
Judge E. Mac Troutman, to whom the Philadelphia case has been
assigned, has already disposed of several questions likely to
recur in the New York action.  For instance, Judge Troutman
has already dismissed three causes of action in Philadelphia,
two of which have been reasserted by Record Club in its later
New York complaint.  Rulings by Judge Troutman in the discovery

---

[1]/One action was filed in the District of Colorado and
the other was filed in the District of New Jersey.

- 4 -

area may also be applicable to the New York case.  The incon-
venience to the parties resulting from such a transfer is minimal
because the plaintiff, whose offices and records are located
at York, Pennsylvania, within the Eastern District is already
before Judge Troutman.  And the New York defendants, many of
whose offices are in New York, are willing to bear whatever
slight inconvenience results to them from transfer.

In a final argument opposing transfer Record Club
suggests that voluntary cooperation among counsel could eliminate
the potential problems involved in this litigation.  But as
Record Club emphasizes in its papers, all attempts to secure
such cooperation have met with failure.  In this situation
transfer of the New York action under §1407 is appropriate.

IT IS  THEREFORE  ORDERED that the action listed on
the attached Schedule A pending in the Southern District of
New York be transferred to the Eastern District of Pennsylvania
pursuant to Section 1407.  With the written consent of that
court, the transferred case is assigned to the Honorable E.
Mac Troutman for coordinated or consolidated pretrial proceed-
ings with the related case pending in that district.

SCHEDULE A                                      DOCKET NO. 59

## SOUTHERN DISTRICT OF NEW YORK

Record Club of America, Inc. v. A...& M          CIVIL ACTION
    Records, et al                           No. 70 Civ 2320

## EASTERN DISTRICT OF PENNSYLVANIA

Record Club of America, Inc. v. Columbia         CIVIL ACTION
    Broadcasting System, Inc., et al          No. 68-1132

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

APR 19 1972

IN RE CBS LICENSING ANTITRUST LITIGATION

Record Club of America, Inc. v. Kinney          )
Services, Inc., et al., S.D. New York,          )          DOCKET NO. 59
Civil Action No. 71 Civ. 5096                   )

OPINION AND ORDER
_____

BEFORE ALFRED P. MURRAH, CHAIRMAN AND JOHN MINOR WISDOM,
EDWARD WEINFELD, EDWIN A. ROBSON*, WILLIAM H. BECKER,
JOSEPH S. LORD, III*, AND STANLEY A. WEIGEL, JUDGES OF THE PANEL

_____

PER CURIAM

In January, 1971 the Panel transferred an action pending in the
Southern District of New York to the Eastern District of Pennsylvania
for pretrial proceedings with a similar action pending there.  Both
actions were brought by Record Club of America attacking licensing
agreements entered into by CBS (licensee) with numerous producers
and manufacturers of records and tapes (licensors) concerning the
production of records and tapes for use in Columbia's record club.
In re CBS Licensing Antitrust Litigation, 328 F. Supp. 511 (J.P.M.L.
1971).  Record Club has now filed a third action in the Southern
District of New York against Kinney Services, Inc. and its record
sales subsidiary, Warner-Elektra-Atlantic Distributing Corporation.
The Panel entered an order to show cause why this action should not
be transferred to the Eastern District of Pennsylvania.  On the
basis of the voluminous briefs and affidavits filed and the

_____

*     Although Judges Robson and Lord were unable to attend the
hearing, they have, with the consent of the parties, participated
in this decision.

arguments presented at the hearing, we conclude that this latest
complaint shares many questions of fact with the previously trans-
ferred cases and that transfer to the Eastern District of
Pennsylvania will serve the convenience of the parties and witnesses
and further the just and efficient conduct of the litigation.

The first two actions in this litigation allege that the
exclusive license agreements between CBS and other producers and
manufacturers of records and tapes constitute violations of the
federal antitrust laws. 1/  These licenses allegedly injured Record
Club by forcing it to purchase records and tapes of the licensors
for use in its record club at prices higher than those paid by
CBS, making it impossible for Record Club to compete effectively
with CBS in the record club market.  Among the defendant licensors
in these actions are Warner Bros. Records and Elektra Records,
both of which are now owned by Kinney Services, Inc.

The third complaint alleges that Kinney's acquisition of
Warner Bros., Elektra and Atlantic Records and the exclusionary
and reciprocal trade agreements the acquired companies entered
into with Kinney and other unnamed co-conspirators constitute
violations of Sections 1 and 2 of the Sherman Act and Section 7
of the Clayton Act.  More specifically, Record Club alleges that
it was injured by defendants' refusal to grant it licenses for
the manufacture of records and tapes for the club markets similar
to the licenses granted by these companies to other record clubs.
This conduct allegedly raised the cost to Record Club of defendants'

---

1/      Both actions originally alleged violations of Sections     and
2 of the Sherman Act, Section 2 of the Robinson-Patman Act
Section 5 of the Federal Trade Commission Act.

products, making it impossible to compete in the club market and
denying it the capital to compete in the record and tape production
market.

Record Club opposes transfer of its third action to the Eastern
District of Pennsylvania.  It emphasizes the allegations concerning
Kinney's acquisition of the three record club subsidiaries and
asserts that the fact questions raised are whether Kinney's conduct
in acquiring and dominating the three previously independent com-
petitors has been unlawful and, if so, whether Record Club was
injured thereby.  It urges that Kinney's acquisitions have nothing
to do with CBS' exclusive licensing practices attacked in the two
earlier complaints and that there is no basis for coordinated or
consolidated pretrial proceedings in these cases.

It is true that the matter of Kinney's acquisitions is not
covered in the earlier complaints, but we agree with Kinney's
assertion that all three complaints grow out of a single grievance.
The central subject of the complaint is still Record Club's alleged
inability to obtain licenses to manufacture and sell phonograph
records and tapes, forcing it to purchase finished records and tapes
at higher prices than its club competitors and putting it at a
competitive disadvantage in the club market.  Kinney's acquisitions
apparently have little significance beyond their alleged effect on
the subsidiaries' licensing policies.  And, significantly, the only
allegations of injury to Record Club parallel the earlier complaints
by asserting that Kinney caused two of its subsidiaries to deny
licenses for the club market to Record Club, making Record Club's
operation more expensive.

- 4 -

Any inquiry into these allegations will cover factual issues common to the earlier actions.  Because of its essential similarity to the previously transferred cases, this action should also be transferred to the Eastern District of Pennsylvania.[2]

IT IS THEREFORE ORDERED that the action entitled Record Club of America, Inc. v. Kinney Services, Inc., et al., Southern District of New York, Civil Action No. 71 Civ. 5096 be, and hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable E. Mac Troutman for pretrial proceedings with the actions listed on the attached Schedule A.

this action are already before Judg_____ an
_____nia.  We previously determined th_____
_____for the parties and witnesses.  I_____
_____pra.

SCHEDULE A                                    DOCKET NO. 59

### EASTERN DISTRICT OF PENNSYLVANIA

Record Club of America, Inc. v. A & M        Civil Action
Records, et al.                              No. 71-220

Record Club of America, Inc. v. Columbia     Civil Action
Broadcasting System, Inc., et al.            No. 68-1132